# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 2:08CR00015 |
| v. | ) | **OPINION** |
| | ) | |
| **CHRISTOPHER JAMES FAUCETT**, | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

In this Opinion, I explain the reasons for the sentence imposed on the defendant.

The defendant, Christopher James Faucett, was convicted by a jury of threatening on two occasions, March 30, 2008, and June 4, 2008, to murder the warden of the United States Penitentiary Lee County ("USP Lee") (Counts Two and Three), in violation of 18 U.S.C.A. § 115(a)(1)(B) (West 2000). The jury acquitted him of an additional charge of threatening the President of the United States (Count One).

When the threats were made, Faucett was an inmate at USP Lee, serving a 70-month term of imprisonment for a bank robbery in Utah. The March 30 threat

occurred after Faucett and his cell mate broke the sprinkler head in their cell in the Special Housing Unit ("SHU") and were being removed from the cell in restraints. The June 4 threat occurred under similar circumstances, after Faucett again broke a sprinkler head in a cell in the SHU. Both cell extractions were recorded and the jury was able to see and hear the circumstances under which the threats were made.

After the conviction, a probation officer of this court prepared a Presentence Investigation Report ("PSR"), in which the defendant's sentencing range under the advisory Sentencing Guidelines was calculated. The parties filed no objections to that calculation. Faucett was scored with a Total Offense Level of 18 and a Criminal History Category of IV, which translated into a sentencing range of 41 to 51 months imprisonment.

The government moved the court for a sentence above the advisory guideline range because of the seriousness of the offense conduct, to deter the defendant from similar conduct, and to protect the public from his future crimes. The defendant requested a sentence within or below the guideline range "based upon his lack of guidance as a youth, his life history of neglect and mental illnesses." (Def.'s Mem. in Aid of Sentencing 10.)

While the court must begin the sentencing process by "correctly calculating the applicable Guidelines range," *Gall v. United States*, 552 U.S. 38, 49 (2007), the court

may reject a sentence within the range "because a sentence within the Guidelines fails to reflect the other [18 U.S.C.] § 3553(a) factors or 'because the case warrants a different sentence regardless.'" *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)).

In imposing a sentence, the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as

> the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2009). The Fourth Circuit has characterized these statutory purposes in summary form as follows: to <u>punish</u> the defendant, to <u>deter</u> him and others from future crimes, to <u>incapacitate</u> the defendant in order to protect the public, and to <u>rehabilitate</u> the defendant. *United States v. Raby*, 575 F.3d 376, 380 (4th Cir. 2009). The court is required to impose a sentence "sufficient, but not greater than necessary," to comply with these purposes. 18 U.S.C.A. § 3553(a).

The court must explain the reasons for its sentence, regardless of whether the sentence is above, below, or within the advisory guideline range. *United States v.*

*Carter*, 564 F.3d 325, 330 (4th Cir. 2009). This explanation must contain an "'individualized assessment'" based on the particular facts of the case before [the court]." *Id.* (quoting *Gall*, 552 U.S. at 50). Moreover, "a major departure [from the guidelines] should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

I find that a sentence within the advisory guideline range in this case does not reflect the 3553(a) factors and the circumstances warrant a different sentence.[1]

Faucett, now age 27, has had an unstable life, with "a long history of emotional and behavioral problems dating back to childhood." (U.S. Bureau of Prisons, Forensic Report, 2/20/09 ("BOP Report"), at 11.) He reports that his parents were drug abusers and that he was removed from their custody and placed in state care at age five, where he remained, except for a brief period when he lived with an aunt, until age 18. A psychologist who treated him as a young person described him as "intelligent" but "lack[ing] common sense skills and independent living skills." (PSR ¶ 55.) He has received numerous psychiatric diagnoses, including Pervasive Developmental Disorder, Conduct Disorder, Intermittent Explosive Disorder, Depression, Post-Traumatic Stress Disorder, Dysthymia, Attention Deficit

---

[1] The court must "state in open court" its reasons for the sentence, 18 U.S.C.A. § 3553(c) (West Supp. 2009), and I recited these reasons orally at the defendant's sentencing.

- 4 -

Hyperactivity Disorder, Borderline Personality Disorder, and Asperger's Syndrome. (BOP Report 4, 9.) He has been prescribed numerous psychiatric medications. The latest psychiatric evaluation by the Bureau of Prisons found Faucett to be properly diagnosed with a "severe character pathology (i.e., Borderline Personality Disorder)," rather than a major mental illness. (*Id.* at 11.) Faucett has threatened suicide on occasion, but told his BOP evaluator that "I have a history of threatening suicide for secondary gain." (*Id.* at 8.)

The defendant has never married and has no children. He has lived a transient life, with a history of unskilled, short-term jobs . According to him, he was never able to hold a job because, "My moods would switch—some days I just felt like telling the boss off and quitting." (*Id.* at 3.) He described himself as homosexual, with dozens of sexual partners while in prison. He denied any history of drug abuse.

Faucett has a documented history of violence and intimidation. At age 19, he was convicted of sending threatening voice mails to a police officer who had given him a traffic ticket. At age 21, he was convicted of bank robbery, during which he threaten to shoot a teller and in attempting to escape, drove at high speed towards a police officer. While in federal prison, he has been a constant disciplinary problem. The record shows that he has been disciplined on eight occasions for threatening bodily harm; seven occasion for assaulting others, including staff; for possessing a

weapon; on three occasions for interfering or tampering with a security device; on nine occasions for destroying government property; on 14 occasions for refusing an order; and on ten occasion for refusing a drug test. (Gov't's Mot. for Upward Departure 3-4.)

Counsel for the defendant attempts to characterize Faucett's offense conduct in this case as simply frustration over his treatment in prison and an effort to get some official outside the prison system to investigate his situation. Because of his mental impairments, it is argued, Faucett is unable to understand how his threats might affect other people. Counsel contends that the defendant's poor judgment, lack of insight, and grandiosity lead him to this self-defeating behavior, rather than any real intent to harm others. Counsel has submitted a letter from a school psychologist who treated Faucett ten years ago, and who believes that because of his mental impairments, "Chris needs protection from society rather than the reverse." (Charity Pankratz letter, 1/26/10, at 2.)

While there is natural sympathy for those like the defendant who are forced to navigate life without the benefit of a loving and nurturing childhood, and who may as a result be illequipped to deal with society, particularly if they are additionally burdened with mental illness, my duty includes an obligation to protect the public. Faucett's lack of insight and self-absorption allows him to engage him in conduct that

puts others at great risk, such as shown by the circumstances of his bank robbery. Faucett's sence of responsibility to others has obviously not improved over the years. I believe that a sentence above the guideline range is necessary in order to incapacitate the defendant in order to better protect the public from his future reckless conduct.

Moreover, I find that a sentence longer than the guideline range is necessary to deter the defendant from further misconduct while he is incarcerated. It is clear that administrative punishments in prison have not worked. While counsel for the defendant seeks to minimize the seriousness of Faucett's threats to kill the warden, indicating that no one took these threats seriously because they knew that they were just talk by an unbalanced inmate, I take a different view. For an inmate to describe in detail how he intends to kill the warden convinces me, as it did the jury in this case, that these were true threats that could not be ignored, lest the defendant and others be emboldened to go even further.

For this reason, an appropriate sentence in the case is imprisonment for 72 months.

DATED: February 5, 2010

/s/ JAMES P. JONES
Chief United States District Judge